NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOHN S. RICHARDSON, | : | |
| | : | Civil Action No. 10-4954 (KM) |
| Petitioner, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| MICHELLE RICCI, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

Petitioner pro se
John S. Richardson
New Jersey State Prison
Trenton, NJ  08625

Counsel for Respondents
Debra Grace Simms
Essex County Prosecutor's Office
50 West Market Street
Newark, NJ

**McNULTY**, District Judge

The Petitioner, John S. Richardson, a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are Administrator Michelle Ricci and the Attorney General of New Jersey.

For the reasons stated herein, the Petition will be denied.

# I. BACKGROUND

## A. Factual Background

The relevant facts are set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[1]

> The jury could have found the following facts beyond a reasonable doubt. At approximately 1:20 p.m. on September 2, 1999, Joseph Clair was shot to death by defendant. The shooting took place at the Berkeley Terrace housing complex, in Irvington. Ten shell casings, two spent projectiles and a vial of cocaine were found a few feet from Clair's body. A resident of the complex subsequently recovered an eleventh shell casing. Twenty-two vials of cocaine were recovered from Clair's pocket. On October 6, 1999, the Newark police found the gun defendant used in the shooting. Clair was shot ten times. The bullets entered his back and his side.

> Terrell Anderson lived at Berkeley Terrace and was Clair's friend. Right before the shooting, Anderson was on his bicycle talking to Clair, who was sitting on a car in front of Berkeley Terrace. Anderson observed defendant, who he knew, run across the street, pull out a gun and start shooting at Clair, who had his back to defendant. Anderson testified that defendant was with another man. According to Anderson, during the shooting, the other man was standing in the middle of the street facing defendant. Anderson did not identify the other man. As defendant continued shooting, Clair got up and fell to the ground. Defendant then fired two or three shots at Anderson, who was not hit. Anderson ran away and then left word at his godmother's residence that she should call for an ambulance. He then returned to attend to Clair, who was lying on his back.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

Lisa Williams was a resident of Berkeley Terrace in an apartment across the street from where the shooting took place. She was acquainted with Bobby Pierce, who was also known as "Ab," for some eighteen years. On the morning of September 2, Williams saw defendant, Pierce and Clair having an argument on the porch around the corner from where she lived. Defendant and Pierce objected to Clair's being outside the gate of the apartment complex, which was the only way inside the complex. Despite giving a statement to the police that she saw defendant and Pierce loading a gun that morning, she did not recall that at trial.

Williams left her apartment shortly after observing the argument, and returned around 12:30 p.m. At trial, she retracted a statement she had given to the police that she saw Clair and defendant arguing at about 12:30 p.m. near the complex's dumpster. While she was doing some cleaning in her apartment, Williams heard a gunshot, looked out of her window, and saw defendant shooting at Clair by the gate. While the shooting was going on, she heard Pierce tell defendant, "[Y]ou better kill that [motherfucker]." Williams did not see Pierce but recognized his voice. Williams further noticed that the gate to the complex was locked which, according to her, was unusual. Williams testified that Pierce told her the following day to mind her business or she would "get the same thing."

William Burwell was a passenger in a car traveling on the street where the shooting took place. When the car was stopped at a traffic light, Burwell saw two men coming. One of the men possessed a gun. The driver of the vehicle, Abdell Abdul-Rashid, heard a shot and then saw two men running, with one holding a gun. One man ran behind his vehicle, while the other ran in front. Rashid identified defendant as the man with the gun.

In a statement to the police, defendant claimed he shot Clair eight or nine times from five or six feet away in self-defense after he and Clair gave each other "hard looks" and after Clair moved his hand. Defendant added that he did not want to kill Clair, but panicked. Defendant claimed that he was alone at the time of the shooting. According to defendant, he and Clair had a "beef" because Clair thought defendant was selling drugs in Clair's territory. Defendant admitted to selling drugs in the past. In addition, he admitted

shooting at Demetrius Collins, Clair's associate, several months earlier.

Defendant also testified at trial.  Throughout 1999, defendant lived part-time with his girlfriend at Berkeley Terrace.  He was aware that Clair had a girlfriend at the same complex.  Defendant admitted to selling drugs at Berkeley Terrace at the beginning of 1999.  Because of threats from Clair and Collins, defendant began carrying a gun.  There was evidence at trial that Clair sold drugs for Collins.  In late January 1999, according to defendant, he was jumped by Clair and Collins, and Collins threatened to shoot defendant.  The next time defendant saw Collins, defendant fired shots at Collins, but missed.  As a result of the shooting, defendant spent four months in juvenile detention.  Defendant denied that the dispute with Collins was over drugs, but claimed it was over a "problem" Collins had with defendant.

Defendant claimed that on or about August 1, 1999, Clair shot at him.  Around that time, Clair told defendant that he was supporting Collins's "beef" with defendant, stating that he was going to "ride for his man."  According to defendant, on August 29, 1999, Clair and another man pistol-whipped and kicked defendant, and hit his head on the concrete.  Defendant did not report these incidents to the police.

Defendant described the shooting.  He testified that on September 2, 1999, he was walking on Ellis Avenue toward the Berkeley Terrace complex after leaving a restaurant on Springfield Avenue.  He saw Clair sitting on a car approximately forty-eight feet away; defendant became nervous because he knew Clair to be violent due to his prior actions.  Defendant began crossing the street at an angle where he was about twelve to fifteen feet from Clair.  Defendant observed Clair talking to Anderson.  Defendant and Clair began staring at one another, and then defendant observed Clair reach into his waistband and move towards defendant.  Believing Clair was going to shoot and kill him, defendant took out a gun he was carrying in his pocket, and began shooting.  He claimed he emptied the chamber because he was scared.  Defendant denied intending to shoot at Anderson.  After the shooting, defendant threw the gun in a dumpster two blocks away and fled to Montclair, where he was later arrested.

4

Defendant denied that there was anyone with him at the time of the shooting, denied arguing with Clair near the dumpster about an hour prior to the shooting, and denied being with Pierce when he was arguing with Clair in the early morning of September 2. Defendant further denied that Pierce gave him the gun, and claimed that he bought it from someone in Newark.

Defendant also offered the testimony of Angela Collins, Demetrius Collins's cousin and Pierce's girlfriend, who was living at Berkeley Terrace on the date of the shooting. After hearing the shots, Angela looked out of her apartment window and saw Anderson roll Clair over onto his back and take a gun from his waistband. Anderson then threw the gun into the bushes, knocked on the door of another resident's apartment in the complex, and then went back and retrieved the gun and entered the apartment.

(Answer, Ex. C, Opinion of Superior Court of New Jersey, Appellate Division, at 3-8 (Nov. 8, 2004).)

B. Procedural History

Following a jury trial in the Superior Court of New Jersey, Law Division, Essex County, Petitioner was convicted of murder, N.J.S.A. 2C:11-3(a)(1) and (2); fourth-degree aggravated assault, N.J.S.A. 2C:12-1b(4); unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a). On July 31, 2001, the trial court sentenced Petitioner to a term of 30 years' imprisonment, with a 30-year parole disqualifier, on the conviction for murder; to a concurrent 18-month term, with 18 months of parole ineligibility, on the conviction for aggravated assault; and to a concurrent five-year term on the conviction for unlawful possession of a weapon. The conviction for possession of a weapon for an

unlawful purpose merged and therefore did not affect the sentence imposed.

On November 8, 2004, the Superior Court of New Jersey, Appellate Division, affirmed the conviction and sentence. (Answer, Ex. C.)  The Supreme Court of New Jersey denied certification on January 19, 2005.  State v. Richardson, 182 N.J. 429 (2005).

On or about February 25, 2005, Petitioner filed in the trial court a petition for post-conviction relief ("PCR").  Following a non-evidentiary hearing, the PCR court denied relief in a written opinion dated February 15, 2008, and order dated March 27, 2008. (Answer, Ex. G., Da104-Da127.)  On April 30, 2009, the Appellate Division affirmed the denial of PCR.  State v. Richardson, 2009 WL 1149554 (N.J. Super. App. Div. April 30, 2009).  The Supreme Court of New Jersey denied certification on December 14, 2009. State v. Richardson, 200 N.J. 549 (2009).

This timely habeas Petition followed.  Here, Petitioner asserts the following claims, slightly reordered for clarity:

- the trial court improperly permitted the admission of hearsay evidence (Grounds Three and Five);

- the trial court improperly permitted introduction of "other crimes" evidence (Ground Four);

- the trial court improperly permitted introduction of evidence regarding Petitioner's prior juvenile adjudication (Ground Six);

- the trial court improperly denied a request for a jury charge on "imperfect self-defense" (Ground Seven);

- trial counsel failed to provide effective assistance by failure to object to errors in the jury charge (Ground One), failure to prepare for pre-trial motions and request an adjournment (Ground Two (1)), failure to locate witnesses prior to trial (Ground Two (2)), introduction of evidence of Petitioner's juvenile adjudication and detention (Ground Two (3)), and production to the prosecution of the prejudicial statement of witness Lisa Williams (Ground Two (4)); and

- appellate counsel failed to provide effective assistance by failure to raise on appeal the issue of errors in the jury charge (Ground One).

This case was reassigned from District Judge Wigenton to me on August 9, 2012. Briefing is complete and the matter is ready for decision.

## II.   28 U.S.C. § 2254

Title 28, U.S. Code, § 2254(a) provides:

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States.

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." It may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a

legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter). Id. at 407-09. See also Moore v. DiGuglielmo, No. 09-2189, 489 Fed. App'x 618, 624 n.2 (3d Cir. 2012) (non-precedential). To be "unreasonable" the state court's application of federal law must be objectively unreasonable. Id. at 409. "This standard ... is 'difficult to meet': To obtain habeas corpus relief from a federal court, a state prisoner must show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Metrish v. Lancaster, 133 S.Ct. 1781, 1786-87 (2013) (quoting Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011)). In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference. Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)). With respect to claims presented to, but unadjudicated by, the state courts, however, a

federal court may exercise the same independent judgment it would have applied in a pre-AEDPA case. See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000). See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein). In such instances, "the federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA." Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001) (citing McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999)). "However, § 2254(e)(1) still mandates that the state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence." Simmons v. Beard, 581 F.3d q158, 165 (3d Cir. 2009).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal case law, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in

state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies. See 28 U.S.C. § 2254(b)(2); Carrascosa v. McGuire, 520 F.3d 249, 255 & n.10 (3d Cir. 2008).

Finally, a pro se pleading is held to less stringent standards than those applied to pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

### III. ANALYSIS

A. Evidentiary Issues

Petitioner asserts that the trial court improperly admitted in evidence certain hearsay statements. These included an out-of-court identification attributed to Kasim Hawthorne, who was not called as a witness at trial, and a statement purportedly made by a co-conspirator, urging Petitioner to kill the victim. In addition, Petitioner asserts that the trial court improperly allowed the admission of "other crimes" evidence and evidence regarding Petitioner's prior juvenile adjudication and detention for shooting at Demetrius Collins.

11

## 1. Evidentiary issues: Decision on direct appeal

On direct appeal, the Appellate Division rejected all of these evidentiary claims to the extent they were raised there:

> In point 1, defendant contends that the trial judge abused her discretion by admitting into evidence Williams's testimony regarding Pierce's statement to defendant during the shooting, that he should "kill that motherfucker," under the co-conspirator exception to the hearsay rule, N.J.R.E. 803(b)(5), because there was no independent proof of a conspiracy between Pierce and defendant.

> The State maintains that the statement was properly admitted because it was relevant to defendant's claim that he acted in self-defense, and that the conspiracy was substantiated through the attendant circumstances. We agree with the State.

> . . .

> The evidence of the existence of the conspiracy included Williams's testimony about the argument between defendant, Pierce and Clair. Moreover, Williams had given a statement to the police that she saw defendant and Pierce loading a gun. Further, Pierce locked a certain gate to prevent Clair's escape from the area. In addition, the judge considered the evidence of defendant's statement to the police admitting his involvement in the illegal drug trade.

> A statement may be "admitted against a party if the statement was made while the party and the declarant were allegedly participating in a plan to commit a crime or civil wrong and the statement was made in furtherance of that plan." Biunno, <u>Current N.J. Rules of Evidence</u>, comment 5 on N.J.R.E. 803(b)(5) (2004) (citing <u>State v. Savage</u>, 172 N.J. 374, 402 (2002)). Under this co-conspirator exception to the hearsay rule, any statement made by one conspirator during the course of and in furtherance of the conspiracy is admissible against any other member of

the conspiracy. State v. Phelps, 96 N.J. 500, 508 (1984). Three distinct conditions must be met for statements to qualify under the rule: (1) the statement must have been made in furtherance of the conspiracy; (2) the statement must have been made during the course of the conspiracy; and (3) there must be evidence, independent of the hearsay, of the existence of the conspiracy and the defendant's relationship to it. Id. at 50-10. ... The State has the burden of satisfying the third prong of the test by a preponderance of the evidence. State v. Farthing, 331 N.J. Super. 58, 84 (App. Div.), certif. denied, 165 N.J. 530 (2000). ... The rule is applicable whether or not the indictment contains a conspiracy count. Farthing, supra, 331 N.J. Super. at 82. The trial judge's ruling on the question is reviewed for an abuse of discretion. State v. Hunt, 115 N.J. 330, 367 (1989).

... What [Defendant] challenges is that there was independent evidence of a conspiracy. We are satisfied that the trial judge did not mistakenly exercise her discretion in concluding that there was independent evidence. Williams testified that she saw defendant, Pierce and Clair having an argument on the morning of September 2, 1999. Williams gave a statement to the police, retracted at trial, that she subsequently saw defendant and Pierce loading a gun. Williams further testified that Pierce told her the day after the shooting to mind her own business or she would "get the same thing." In addition, Anderson, Burwell and Abdul-Rashid testified that they saw a second man with defendant at the time of the shooting. We conclude that this constitutes the type of trustworthy evidence envisioned by Phelps.

III.

Defendant next claims that the trial judge erred in admitting that portion of his statement to the police in which he admitted shooting at [Demetrius] Collins in early 1999. Defendant maintains that the statement was not relevant because it went to Clair's, not his, motive and intent, and that any relevance was outweighed by the statement's undue prejudice inasmuch as it could have led the jury to believe that defendant tended to "shoot first and ask questions later." We disagree.

Prior to trial, defendant challenged the admission of one sentence in the statement he gave to the police, namely, that after he was "jumped" by [Demetrius] Collins and Clair in late January 1999, he fired a shot at [Demetrius] Collins the next time he saw him. [The motion judge admitted the statement under N.J.R.E. 404(b).]

... N.J.R.E. 404(b) provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the disposition of a person in order to show that he acted in conformity therewith. Such evidence may be admitted for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident when such matters are relevant to a material issue in dispute.

Thus, "[e]vidence of other crimes, wrongs, or acts may not be introduced into evidence to prove a defendant's criminal disposition as a basis for establishing guilt of the crime charged." State v. Sanders, 320 N.J. Super. 574, 581 (App. Div.), certif. denied, 162 N.J. 132 (1999). Such evidence must meet a four-prong test of admissibility: (1) the evidence must be relevant to a material issue in dispute; (2) the other crime, wrong, or act must be similar in kind and reasonably close in time to the crime presently charged; (3) the evidence of the other crime, wrong or act must be clear and convincing; and (4) the probative value of such evidence must not be outweighed by the prejudice to the defendant. State v. Cofield, 127 N.J. 328, 338 (1992). The admissibility of other-crime evidence is left to the sound discretion of the trial judge, and will be reviewed under an abuse of discretion standard. Sanders, supra, 320 N.J. Super. at 581.

Evidence of prior threats as well as prior assaults against the crime victim are admissible under N.J.R.E. 404(b) to show the defendant's intent with respect to the subject crime. Biunno, supra, comment 10 on N.J.R.E. 404 (2004). Here, there were prior incidents involving violence, between defendant, Clair and [Demetrius] Collins. Defendant contends that

admission of the statement made it appear more likely
that he was not in fear for his life on September 2,
1999. Aside from defendant's failure to explain how
this is so, even if true this goes to the weight to be
given to the evidence, not its admissibility.
Moreover, we are satisfied that the evidence was
relevant to the State's claim that defendant shot
Clair, not in self-defense, but as a result of a drug
turf dispute.

Moreover, we cannot conclude that the relevance of
the evidence was outweighed by any prejudice to
defendant. Despite defendant's claim that the evidence
could lead the jury to believe he would "shoot first
and ask questions later," a jury could just as
reasonably believe that defendant really feared that
[Demetrius] Collins and Clair were out to kill
defendant.

Therefore, we do not conclude that the trial judge
abused her discretion in admitting the evidence under
N.J.R.E. 404(b). ...

In addition, the evidence was admissible as
substantive proof of the continuing dispute between
defendant and Clair, despite the seven-month lapse in
time between the [Demetrius] Collins shooting and the
Clair shooting. Other-crime evidence is often admitted
if the other crime constituted part of a continuous
sequence of events including the crime in question.
Biunno, <u>supra</u>, comment 15 on N.J.R.E. 404. N.J.R.E.
404(b) does not apply if the evidence, with respect to
the defendant's conduct, is part of the total criminal
event on the same occasion, i.e., part of the res
gestae of the crimes. ... Such evidence is admissible
to explain the context or setting of the case, ... and
to "complete the story of the crime on trial by placing
it in the context of nearby and nearly contemporaneous
happenings," ... to show the mosaic of defendant's
course of conduct, ... and to "paint a complete picture
of the events which occurred." ...

(Answer, Ex. C., Opinion of Appellate Division at 8-17 (Nov. 8,

2004) (citations omitted).)

## 2. Evidentiary issues: PCR and appeal from denial

In his PCR petition, Petitioner challenged the admission of an out-of-court identification of himself as the shooter by Kasim Hawthorne, who did not testify at trial. Petitioner asserted two related Sixth Amendment grounds: ineffective assistance and the right to confront witnesses. See Answer, Ex. G, Petitioner's Brief on PCR, at Da78-79. The PCR court, however, addressed this claim only in the context of ineffective assistance. On that score, the PCR court found that any arguable ineffective assistance error was not prejudicial. Because numerous other witnesses had identified Petitioner as the shooter, the introduction of the out-of-court identification was "cumulative and inconsequential." (Answer, Ex. G., Opinion of PCR Court Da104, at Da122-123 (Feb. 15, 2008).) Indeed, as noted by the PCR court, the entire issue of identification was unimportant; the defense conceded that Petitioner was the shooter but asserted that he had shot Clair in self-defense. (Id.) As to the ineffective-assistance component, the Appellate Division affirmed the PCR court without discussion. See generally State v. Richardson, 2009 WL 1149554 (N.J. Super. App. Div. Apr. 30, 2009). As to the confrontation component of Petitioner's challenge to the Kasim Hawthorne identification, however, neither PCR court supplied any discussion.

In his petition for PCR, Petitioner also challenged the admission of other-crimes evidence. Other-crimes evidence relating to his prior participation in drug dealing was contained in his own statement to police, and in the testimony of Terrell Anderson and Lisa Williams. In addition, Petitioner's statement to police contained references to the shooting incident with respect to Demetrius Collins. This other-crimes evidence, claimed Petitioner, was highly prejudicial, and it was admitted without proper foundation and in contravention of established procedures for the consideration of such evidence. Petitioner further argued that counsel on direct appeal, by failing to raise this issue, failed to provide constitutionally effective assistance. (Answer, Ex. G, Defendant's Brief in support of petition for PCR, Da53, at Da69, Da73-Da76.) The decision denying PCR relief expressly addressed only the claim regarding the use of Petitioner's own prior statement regarding his assault on Demetrius Collins. (Answer, Ex. G., Opinion of Superior Court of New Jersey, Essex Vicinage, Da104-Da126 (Feb. 15, 2008).)

On appeal from the denial of PCR relief, Petitioner also raised the more general claim that admission of the "other crimes" evidence deprived him of a fair trial. (Ex. G, Defendant's Brief on appeal of denial of PCR relief, at 42-49.) The Appellate Division denied that claim without discussion. State v. Richardson, 2009 WL 1149554 at *4.

### 3.   Evidentiary issues: Discussion

The violation of a right created by state evidentiary law is not itself cognizable as a basis for federal habeas relief. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting Lewis v. Jeffers, 497 U.S. 764, 680 (1990))); Ross v. District Attorney of the County of Allegheny, 672 F.3d 198, 207 n.5 (3d Cir. 2012) (citing Estelle).

A federal claim may be established, however, if the admission of evidence did not merely violate state law, but rose to the level of a deprivation of due process. Estelle, 502 U.S. at 70 ("'the Due Process Clause guarantees fundamental elements of fairness in a criminal trial'") (quoting Spencer v. Texas, 385 U.S. 554, 563-64 (1967). To rise to that level, such an error must have been so pervasive as to have denied Petitioner a fundamentally fair trial. Keller v. Larkins, 251 F.3d 408, 413 (3d Cir.), cert. denied, 534 U.S. 973 (2001).

Similarly, a federal claim may be established if the admission of hearsay did not merely violate state evidence law, but rose to the level of depriving a petitioner of his Sixth Amendment right to confront the witnesses against him.[2] See

---

[2] The Sixth Amendment provides that, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." It also guarantees a criminal defendant the right to "Assistance of Counsel" in his defense. Ineffective assistance claims are discussed separately

*generally* Crawford v. Washington, 541 U.S. 36 (2004). In Ohio v.

Roberts, 448 U.S. 56, 66 (1980), the Supreme Court held that the

Confrontation Clause does not preclude the admission of an

unavailable witness's hearsay statement if it bears "adequate

indicia of reliability," i.e., if it falls within a "firmly

rooted hearsay exception" or if it bears "particularized

guarantees of trustworthiness." 448 U.S. at 66. More recently,

the Supreme Court has held that the text of the Sixth Amendment

limits the scope of the flexible test stated by Roberts:

> Where nontestimonial hearsay is at issue, it is
> wholly consistent with the Framers' design to afford
> the States flexibility in their development of hearsay
> law -- as does Roberts, and as would an approach that
> exempted such statements from Confrontation Clause
> scrutiny altogether. Where testimonial evidence is at
> issue, however, the Sixth Amendment demands what the
> common law required: unavailability and a prior
> opportunity for cross-examination.

Crawford v. Washington, 541 U.S. 36, 68 (2004). But even an

erroneous admission of testimonial hearsay in violation of the

Confrontation Clause is "an error in the trial process itself,"

U.S. v. Hinton, 423 F.3d 355, 361-62 (3d Cir. 2005), and is

therefore subject to review under the specialized standard of

harmless error that applies in habeas proceedings.

In Brecht v. Abrahamson, 507 U.S. 619 (1993), the U.S.

Supreme Court held that, on federal collateral review of a

state-court criminal judgment under § 2254, the court should

---

in subpart C, below.

apply a harmless error standard that is more "forgiving" than those that apply on direct appeal. Citing concerns about finality, comity, and federalism, Brecht held that, on federal habeas review, a constitutional error is considered harmless unless it "'had a substantial and injurious effect or influence in determining the jury's verdict.'" 507 U.S. at 631 (quoting Kotteakos v. U.S., 328 U.S. 750, 776 (1946)); see also Fry v. Pliler, 551 U.S. 112, 114, 116-120 (2007).[3]  "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law has a substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless." O'Neal v. McAninch, 513 U.S. 432, 436 (1995). See also Bond v. Beard, 539 F.3d 256, 275-76 (3d Cir. 2008) (applying the Fry/Brecht standard to a § 2254 Confrontation Clause claim), cert. denied, 558 U.S. 835 (2009).

Analyzed under these standards, the Hawthorne photo identification does not rise to the level of constitutional error justifying habeas relief. That identification, to begin with, was cumulative; several other witnesses identified Petitioner as the shooter, and this additional photo identification by a 12-year-

---

[3]     This habeas standard applies even where the state appellate court failed to recognize the error or to review it for harmlessness under the "harmless beyond a reasonable doubt" standard set forth in Chapman v. California, 386 U.S. 18 (1967) and applicable on direct review.  Fry v. Pliler, 551 U.S. 112, 114, 116-120 (2007).

old boy could not have influenced the outcome. More fundamentally, identification was not truly at issue in the case. See ECF no. 25-7, at p. 5 ("MR. CARUSO [defense counsel]: Your Honor, I don't think identification - it's not an issue here.") Petitioner did not deny that he was the shooter; rather, he contended that, when he shot Clair, he acted in self-defense. Hawthorne's identification of Petitioner as the shooter, then, could not have prejudiced his case.

The admission of evidence of prior bad acts, too, cannot be said to have been erroneous, or to have affected the outcome. As to the evidence that Petitioner shot at Collins, had drug-related disputes, and so on, I agree with the cogent opinion of the Appellate Division, quoted at pp. 12-15, above. That court's analysis under N.J. R. Evid. 404(b) parallels federal standards under Fed. R. Evid. 404(b). See also Huddleston v. United States, 485 U.S. 681, 691-92 (1988). If this were an appeal from a federal conviction, those 404(b) rulings would surely be upheld under an ordinary abuse of discretion standard. They certainly do not approach the high level of error and prejudice required to invoke habeas relief under the U.S. Constitution.

The Appellate Division did not explicitly address all of Petitioner's contentions with respect to the evidence of his admitted prior drug dealing and his juvenile record for

attempting to shoot Demetrius Collins.[4] In that connection,
however, I note (a) that the evidence of guilt was very
substantial; (b) that the background of drug dealing was critical
to the jury's understanding of the motive for, and circumstances
surrounding, the killing of Clair; and (c) that the parties
seemingly agreed that Richardson's alleged "beef" with Demetrius
Collins and Clair over drug turf precipitated these events. The
prosecution, of course, treated this evidence as inculpatory.
But Richardson's defense relied heavily on the same evidence; it
was the parties' animosity, arising from their drug-related
dispute, Richardson contended, that caused him to fear for his
life when he confronted Clair.

The trial judge carefully instructed the jury as to the
proper use of the prior bad acts testimony. Such evidence was
not to be treated as evidence of criminal propensity. Rather, it
could be considered only as proof relating to such relevant
issues as the parties' relationship; their states of mind; the
background and context of the killing; and the plausibility, or
not, of self-defense as a motive. See ECF no. 25-7, at pp. 18-21.

In short, the challenged state court rulings were neither
contrary to nor an unreasonable application of controlling
Supreme Court precedent. Nor did they result in any significant

---

[4]     The evidence of the juvenile assault conviction was
apparently actually introduced by the defense. See ECF no. 25-7,
at 6.

prejudice to Petitioner's case. Habeas relief cannot be granted on the basis of these allegedly erroneous evidentiary rulings.

B.  Jury Charge

Petitioner asserts that the trial court erroneously denied a request for a jury charge on "imperfect self-defense." Alternatively, Petitioner asserts that the charge was given but was inadequate.  On direct appeal, the Appellate Division held that the jury charge was adequate:

> In point III, defendant asserts that the trial judge's charge on imperfect self-defense was confusing and misleading because there was no explanation as to what "overreacted" meant and because the charge was not tied to the specific manslaughter lesser-included offenses.
>
> The State maintains that the imperfect self-defense charge comported with New Jersey case law and that defendant failed to object to the charge at trial. We agree with the State.
>
> The judge said:
>
>> You may also consider the lesser included offenses of aggravated manslaughter and reckless manslaughter, if you find that the defendant overreacted to the perceived threat, shooting the victim without purpose, purposely or knowingly causing death or serious bodily harm resulting in death, but with reckless disregard of the substantial risk of death, or under circumstances manifesting extreme indifference to the value of human life.
>
> Our Supreme Court has held that the Criminal Code does not provide for an independent category of justification, excuse or mitigation under the concept of imperfect self-defense.  State v. Bowens, 108 N.J. 622, 626 (1987).  However, such evidence may be relevant to the presence or absence of the essential element of a Code offense.  ...  As the Court stated:

23

If a defendant subjectively thinks that self-defense is necessary but does not intend fatal injury, in either the sense of knowledge or purpose, such evidence is relevant to the State's case on that issue. If such a defendant is aware that his or her acts create a risk of serious harm but unreasonably disregards that risk, then, if the essential elements of the crime are present, the defendant can be found guilty of manslaughter ... instead of murder ... . In some circumstances the evidence may bear upon the question of whether the defendant who committed a homicide in the heat of passion was reasonably provoked. ...

The Bowens court defined imperfect self-defense as meaning "an honest subjective belief on the part of the killer that his or her actions were necessary for his or her safety, even though an objective appraisal by reasonable people would have revealed not only that the actions were unnecessary, but also that the belief was unreasonable." ...

Based on the evidence presented at trial, we are satisfied that the instruction was not confusing or misleading. While it is true that, ordinarily, the better practice is to mold the instruction in a manner that explains the law to the jury in the context of the facts of the case, ..., such a requirement is not always mandatory. ... Here, the entire defense was defendant's fear that Clair would cause him physical harm. Therefore, a reasonable jury could only conclude that the only person defendant could have "overreacted" to was Clair, and any actions defendant perceived Clair might have taken, or was taking. In addition, contrary to defendant's assertion, the judge did tie imperfect self-defense to aggravated and reckless manslaughter and, as discussed infra, did charge the jury on passion/provocation manslaughter.

(Answer, Ex. C., Opinion of Appellate Division at 17-20 (Nov. 8, 2004) (citations omitted).)

Generally, questions relating to jury instructions are matters of state law not cognizable on federal habeas review. See Engle v. Isaac, 456 U.S. 107 (1982); Henderson v. Kibbe, 431

U.S. 145 (1977). Thus, even a jury instruction that is inconsistent with state law does not necessarily merit federal habeas relief.

Where a federal habeas petitioner seeks relief based upon the jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly." "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations omitted).

The Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law." Smith v. Horn, 120 F.3d 400, 416 (1997). See also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without

proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

And even when such a constitutional error has occurred, it is subject to "harmless error" review under the specialized standards applicable to habeas petitions.  See Brecht v. Abrahamson, supra; Neder v. United States, 527 U.S. 1, 8-11 (1999).  "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless." Smith v. Horn, 120 F.3d at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)). In evaluating a challenged jury instruction,

> a single instruction ... may not be judged in artificial isolation, but must be viewed in the context of the overall charge.  If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal quotation marks and citations omitted).

Thus, even if there is "'ambiguity, inconsistency, or deficiency' in the instruction, such an error does not necessarily constitute a due process violation.  Rather, the defendant must show both that the instruction was ambiguous and that there was 'a reasonable likelihood' that the jury applied the instruction in a way that relieved the State of its burden of

26

proving every element of the crime beyond a reasonable doubt."
Waddington v. Sarausad, 555 U.S. 179, 190-91 (2009) (internal
citations omitted).

The trial judge's jury charge on the substantive elements of
the offenses covered them in order, from the most to the least
serious, gradated by the level of intent required. First, the
trial judge instructed the jury as to intent-to-kill murder, and
carefully defined self-defense in connection with that charge.
See ECF no. 25-7, at pp. 23-25. Then followed the charge as to
passion/provocation manslaughter, which specifically stated that
such a provocation might include "a threat with a gun or a
significant physical confrontation." Id. at pp. 29-30. If the
jury failed to find the necessary state of mind to commit murder
or passion/provocation manslaughter, the judge instructed, it
could opt for the lesser offense of aggravated or reckless
manslaughter. Those lesser offenses, the judge instructed, might
apply "if you find that the defendant overreacted to the
perceived threat, shooting the victim without purpose." Id. at p.
30. The jury was instructed to consider "the nature and purpose
of the defendant's conduct, and the circumstances known to him,"
in order to determine whether defendant committed a "gross
deviation from the standard of conduct that a reasonable person
would follow in the same situation." Id. at 30, 31.

The Appellate Division authoritatively ruled that the challenged jury instructions comported with the requirements of state law and were not ambiguous. Even standing alone, that would ordinarily be a sufficient basis to deny habeas relief. See Waddington v. Sarausad, 555 U.S. 179 (2009). Deference aside, however, I concur with the state court's analysis. Under New Jersey law, "imperfect self-defense" is not a defense as such, and it would have constituted error to instruct the jury that it was. At best, "imperfect self-defense" - i.e., Petitioner's perception, accurate or not, that Clair was a threat to him - might constitute evidence as to whether Clair's killing was the result, not of intent to kill, but of passion/provocation or recklessness. Petitioner does not contend that the court failed to instruct the jury as to the essential elements of the various degrees of the offenses, or as to recognized defenses that had a foundation in the evidence. I cannot gainsay the State court's assessment that the court's "overreaction" instruction adequately conveyed that acts falling short of true self-defense might nevertheless bear on the defendant's level of culpability. Similarly, the definition of recklessness left ample room for the jury to consider evidence of so-called "imperfect self-defense." And defense counsel made such arguments in summation. [ECF no. 25-6]

In short, this boils down to a dispute over whether the jury instructions could have been worded better or tailored more explicitly to the facts of the case.[5] There is no credible argument that the instructions, as delivered, relieved the State of its burden to prove the essential elements of the offense beyond a reasonable doubt. Nor are the challenged state court rulings contrary to or an unreasonable application of controlling U.S. Supreme Court precedent. Petitioner is not entitled to federal habeas relief with respect to this claim.

C.    Ineffective Assistance of Counsel

Petitioner asserts that his trial counsel was ineffective for failing to prepare for pre-trial motions; failing to obtain an adjournment; failing to locate witnesses prior to trial; permitting introduction of evidence of Petitioner's juvenile adjudication and detention; producing to the prosecution a prejudicial statement of witness Lisa Williams; and failing to object to errors in the jury charge. Petitioner further asserts that his appellate counsel was ineffective for failure to raise on appeal the issue of errors in the jury charge.

---

[5]    Again, if this were an ordinary appeal from a federal conviction, such a dispute over the discretionary wording of instructions, as opposed to their legal accuracy, would not be likely to produce a reversal. See, e.g., United States v. Turley, 891 F.2d 57, 62 (3d Cir. 1989); United States v. Kapp, 781 F.2d 1008, 1013 (3d Cir.), cert. denied, 475 U.S. 1024 (1986). Still less does this issue rise to the level of justifying habeas relief.

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. That right encompasses "the right to _effective_ assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970) (emphasis added) (citations omitted) (cited in Ross v. Varano, 712 F.3d 784, 797 (3d Cir. 2013)).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984). With respect to the "performance" prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91. With respect to the "prejudice" prong, a "reasonable probability" of prejudice is "a probability sufficient to undermine confidence in the

outcome." _Strickland_ at 694. Thus, counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." _Id._ at 687. The performance and prejudice prongs of _Strickland_ may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." _Id._ at 697.

The Due Process Clause of the Fourteenth Amendment additionally guarantees a defendant the effective assistance of counsel on a first direct appeal as of right. _Evitts v. Lucey_, 469 U.S. 387 (1985). The _Strickland_ standard for effective assistance of trial counsel applies to appellate counsel as well. See _Lewis v. Johnson_, 359 F.3d 646, 656 (3d Cir. 2004); see generally _Jones v. Barnes_, 463 U.S. 745, 754 (1983).

The trial-level PCR court correctly cited the controlling _Strickland_ standard, and exhaustively analyzed and denied Petitioner's claims of ineffective assistance of counsel, (Answer, Ex. G., Opinion of PCR Court at Da 108, 115-126).[6] On appeal of the denial of PCR, the Appellate Division also accurately cited the _Strickland_ standard and affirmed the denial of relief "substantially for the reasons set forth in the PCR judge's lengthy and cogent written opinion of February 15, 2008,"

---

[6] This Court has reviewed the findings of the PCR court as set forth in its Opinion, but because of their length I will not set them out in full here.

31

2009 WL 1149554 at *3. The Appellate Division addressed separately only the claim of ineffective assistance based upon the failure to locate witnesses Wright and Jenkins:

> We briefly comment on the court's finding that two witnesses defendant contends were critical to his claim of self-defense, but whom trial counsel failed to investigate, would at most have provided cumulative testimony. ...
>
> Defendant contends that trial counsel failed to conduct a thorough investigation that would have produced the two additional witnesses, Wright and Jenkins, who were present in the area when the shooting occurred. Neither man observed the shooting. Rather, they saw Anderson seated on a bicycle, Clair seated atop a parked vehicle, and defendant approaching Anderson and Clair's location. They heard the shots and afterwards saw Anderson remove something from Clair's body and discard the item in the bushes, only to retrieve it a short time later. They both stated that the item Anderson retrieved from the bushes was a gun. Defendant urged that their testimony would have been consistent with the testimony of Angela Collins (Collins), who testified that she saw Anderson remove a gun from Clair's body, hide the gun in a nearby bush, and later retrieve the gun and take it into a nearby apartment. The PCR judge found Wright's and Jenkins' testimony cumulative. Defendant urges that this testimony would not have been cumulative, particularly since the jury may have viewed her as a biased witness, given her relationship to Pierce, with whom defendant had a close relationship.
>
> We do not agree that the proffered testimony of these two witnesses would have been cumulative, especially when it appears that neither witness had any particular connection to defendant or the victim. [Angela] Collins, however, was engaged to Pierce and good friends with defendant. Nonetheless, accepting that Wright and Jenkins' testimony would not have been cumulative does not establish a prima facie case of ineffective assistance of counsel or sufficient facts to warrant the exercise of the court's discretion to hold an evidentiary hearing. Defendant was required to come forth with some evidence demonstrating that these

witnesses would have been discovered through the
exercise of due diligence, which defense counsel failed
to do.

Defendant does not contend that he was aware of
these witnesses and provided their names to defense
counsel, who then failed to conduct an investigation.
State v. Martini, 160 N.J. 248, 266, 734 A.2d 257
(1999) (Martini V) (quoting Strickland, supra, 466 U.S.
at 691, 104 S.Ct. at 2066, 80 L. Ed.2d at 695) (stating
that "'counsel has a duty to make reasonable
investigations or to make a reasonable decision that
makes particular investigations unnecessary.'") Nor do
the certifications from the two witnesses reflect any
effort on their part to voluntarily come forward with
relevant information.

In Wright's statement, when asked why he did not
come forward until years later with his information, he
remarked that he never heard from the police and that
had he been asked, he would have provided the
information. It is clear from his statement that he was
aware defendant had been mugged weeks earlier.
Similarly, we infer from Wright's statement that he was
also aware of the contentious relationship between
defendant and Clair. Inexplicably, however, he chose
not to voluntarily provide any information to the
police or to the defense until years later. Jenkins, in
his statement, was not asked why he delayed providing
information about his observations, but indicated that
it was Wright, someone he occasionally saw, who told
him defendant would be going to court soon and that
there was an investigator who wanted to talk to him. In
short, there is nothing to suggest defense counsel's
failure to investigate these witnesses was in any way
attributable to defense counsel's failure to conduct
"reasonable investigations," Martini V, supra, 160 N.J.
at 266, 734 A.2d 257, or was in any way so serious that
counsel's performance fell below that to which
defendant was guaranteed under the Sixth Amendment.
Fritz, supra, 105 N.J. at 52, 519 A.2d 336 (quoting
Strickland, supra, 466 U.S. at 687, 104 S.Ct. at 2064,
80 L. Ed. at 693).

State v. Richardson, 2009 WL 1149554, *3-*4.

That was a reasonable application of the law, to which I am bound to defer. I add that, even when I take the belated Wright and Jenkins certifications at face value, as the state court did, their import remains murky. True, this proffered testimony comes from persons ostensibly more neutral than Angela Collins, who was the girlfriend of Richardson's associate Bobby Pierce. (I note, however, that she was also the cousin of Demetrius Collins, Clair's associate in narcotics dealing, whom Richardson had attempted to shoot seven months before the Clair murder.) Substantively, however, the proffered testimony would be largely cumulative of Angela Collins's testimony that Anderson removed a gun from Clair's body. Presumably Richardson believes that his claim of self-defense might have been bolstered by this less-impeachable testimony that Clair possessed a gun. Richardson himself, however, never claimed that he saw a gun. Rather, Richardson testified that he knew beforehand that Clair was violent, that he and Clair exchanged threatening looks, and that Clair made a move toward his waistband, causing Richardson to "panic[]" and empty his Glock handgun into Clair. It is Richardson's state of mind – his alleged assumption that Clair had a gun – that is at issue. Additional testimony that Clair in fact possessed a gun that Richardson never saw would be of limited significance.

Alternatively, Anderson's alleged taking of the gun might have been used to impeach Anderson's own testimony. There was already an ample basis, however, for impeachment of Anderson. The evidence clearly demonstrated that Anderson was firmly in Clair's camp, and was hostile to Richardson. In that connection, it is worth noting that Richardson shot at Anderson, too.[7]

Petitioner asserts other, miscellaneous ineffective assistance claims. In some, Petitioner faults counsel for failing to raise or prevail on certain substantive issues discussed above in Sections III.A and B. Because I have already found that those issues lack merit, they cannot furnish a valid basis for criticizing counsel's performance. Still other miscellaneous claims involve procedural matters, such as failure to request an adjournment, as to which Petitioner has not alleged any cognizable constitutional error. These either are not errors at all, or else they clearly fall under the rubric of discretionary strategic decisions. This Court further finds that any such arguable errors by counsel did not act cumulatively to prejudice Petitioner within the meaning of Strickland.

---

[7]    The fourth degree aggravated assault conviction was based on Richardson's having shot at Anderson. Anderson – the person whose bias is at issue – believed that some of Richardson's shots were intended for him. Richardson seemingly conceded that he shot in Anderson's direction, but maintained that the target was always Clair, not Anderson.

35

In short, as to the ineffective assistance claims, the state courts correctly identified and applied the controlling Strickland standard. I generally agree with those courts' analysis; a fortiori, I cannot find that those courts unreasonably applied federal precedent. Petitioner is not entitled to relief on these claims.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability will issue.

## V.  <u>CONCLUSION</u>

For the reasons set forth above, the Petition will be denied.  An appropriate order follows.

Kevin McNulty
United States District Judge

Dated: July 24, 2013